UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALY DONNELLAN, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:20 C 06064<br>)<br>) Judge Rebecca R. Pallmeyer |
| THE TRAVELERS COMPANY, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daly Donnellan has auto insurance issued by Defendant The Travelers Indemnity Company ("Travelers"). During the early months of the COVID-19 pandemic, Travelers gave Donnellan a 15-percent credit on her car insurance premiums. Donnellan believes that amount of credit is inadequate. In this lawsuit [28], she alleges that as a result of the pandemic, Travelers' policyholders in Illinois spent less time on the road, meaning that there were fewer accidents and fewer insurance claims, and that Travelers enjoyed an unfair windfall in profits. Travelers now files a motion to dismiss [30]. For the reasons stated herein, that motion is granted.

## BACKGROUND

Daly Donnellan holds an auto insurance policy with Travelers. (Pl.'s First Am. Compl. [28] (hereinafter "Compl.") ¶ 9.) She claims that Travelers gave inadequate premium relief to Illinois policyholders beginning in March 2020, when Illinois took a number of steps to limit the spread of COVID-19. (*Id.* ¶ 9.) On March 9, 2020, Governor J. B. Pritzker issued a disaster proclamation that covered every county in the State of Illinois. (*Id.* ¶ 13.) On March 21, 2020, the governor issued a stay-at-home order that, among other things, limited automobile use to "essential travel." (*Id.* ¶ 14.) That order was extended through May 29, 2020, and various other restrictions were mandated through the remainder of the year. (*Id.* ¶¶ 15-16.)

1

As a result of the COVID-19 pandemic and the state's policy responses, "most people stopped driving or reduced their driving dramatically." (*Id.* ¶ 18 (quoting Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era (hereinafter, "CEF/CFA Report") at 5 (May 7, 2020), https://consumerfed.org/wpcontent/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf).) Donnellan specifically asserts that there was a sharp decrease in miles driven within the State of Illinois between mid-March and the end of 2020. (*Id.* ¶ 19.) Less driving meant that "[a]utomobile accidents also decreased over the same time period." (*Id.* ¶ 20.) And fewer accidents meant Travelers had fewer insurance claims to cover. (*Id.* ¶ 21.)

Insurance premiums are generally based on projections about future claims and costs. (*Id.*) Because claims dropped, "insurers' rates in effect on March 1 became radically incorrect overnight." (*Id.* (quoting CEF/CFA Report at 4).) Donnellan asserts that "[t]he excessive premiums collected by Travelers during the COVID-19 pandemic . . . led to a substantial windfall in profits." (*Id.* ¶ 22.)

Indeed, the pandemic did not go unnoticed by Travelers. In response to it, Travelers offered a premium credit of 15-percent to policyholders for the months of April, May, and June. (*Id.* ¶ 27.) Donnellan received those three credits. (*Id.* ¶ 29.) But Donnellan asserts that this relief "was and is inadequate to compensate for the excessive premiums that [Travelers'] customers have paid as a result of COVID-19." (*Id.* ¶ 28.) She alleges that "at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to . . . Travelers, just for the time period from mid-March through the end of April 2020." (*Id.* ¶ 25.)

Donnellan asserts that Travelers had the obligation to act in good faith in exercising its discretion under a provision of its contract titled "Changes." (*Id.* ¶¶ 30-31, 51.) That provision states:

> A.  This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B.      If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1.      The number, type or use of insured vehicles;
2.      Operators using insured vehicles;
3.      The place of principal garaging of insured vehicles; or
4.      Coverage, deductible or limits.

If a change resulting from A. or B. above requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C.      If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in Illinois. This paragraph (C.) does not apply to changes implemented with a general policy revision that includes both broadenings and restrictions in coverage, whether that general policy revision is implemented through introduction of:

1.      A subsequent edition of your policy or any of its Coverage Sections; or
2.      An amendatory endorsement.

(*Id.* ¶ 30.) Donnellan notes that Travelers had discretion to adjust premiums when the "use of insured vehicles," under section B.1. of the policy, changed during the pandemic. (*Id.* ¶ 31.) Though she does not quote from it, Plaintiff also states the name of the endorsement, under section A of the policy, that directly led to her 15-percent credit: "stay-at-home." (*Id.* ¶ 29.) The endorsement states:

> This Stay-At-Home Auto Premium Credit Program endorsement authorizes payment(s) to you in response to the COVID-19 pandemic.
>
> We will determine, at our exclusive discretion, the amount, frequency, and method of payment(s), if any.
>
> We reserve the right to modify this program provided under this endorsement without notice to you.

(Stay-At-Home Auto Premium Credit Program, Ex. B to Def.'s Mot. to Dismiss [30-2] (hereinafter "Stay-At-Home Credit") at 2.)[1]

---

[1] Normally, the court does not consider matters outside the pleadings in ruling on a motion to dismiss. *See* FED. R. CIV. P. 12(d) (stating the general rule that considering facts outside the pleadings requires that "the motion . . . be treated as one for summary judgment under Rule 56"). But documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Mueller v. Apple Leisure*

Donnellan asserted five counts in her original class action complaint, which she filed with the Circuit Court of Cook County, Illinois. (Pl.'s Original Compl., Ex. 1 to Def.'s Notice of Removal [1-1] ¶¶ 30-60.) Her proposed class action was "brought on behalf of all Illinois residents who were auto insurance policyholders of defendant The Travelers Company, Inc. as of March 1, 2020, and who have thereafter continued to be The Travelers Company, Inc. auto policyholders." (*Id.* ¶ 2.) Travelers timely removed the case to this court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (*See* Def.'s Notice of Removal [1].) CAFA provides this court with original jurisdiction over the action because (i) it involves 100 or more putative class members; (ii) at least one putative class member is a citizen of a state different from that of Travelers; and (iii) the amount in controversy more likely than not exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2) & (d)(6). As Travelers explained in its Notice of Removal, it has nearly 90,000 auto policies in force in Illinois, all of whom are putative class members. (Def.'s Notice of Removal ¶ 10.) Minimal diversity for CAFA is satisfied because Donnellan is a citizen of Illinois and Travelers has its principal place of business in Connecticut. (*Id.* ¶¶ 11-13.) And the amount in controversy plausibly meets the CAFA threshold of $5,000,000. (*Id.* ¶¶ 14-19.)

In her first amended complaint, Donnellan brings claims for bad-faith breach of contract (Count I), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count II), and unjust enrichment (Count III). (Compl. ¶¶ 45-77.) As her amended complaint includes the same putative class members, maintains minimal diversity, and maintains a sufficient amount in controversy, jurisdiction under CAFA is secure.

---

*Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (quoting *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). Donnellan refers to the "Stay-at-Home Auto Premium Credit Program" endorsement in her complaint. (Compl. ¶ 29 ("Plaintiff received three 15% 'stay-at-home' premium credits.").) Since the endorsement governs the credits that Plaintiff alleges were insufficient, it is clearly central to her claim.

**DISCUSSION**

A complaint must contain a short and plain statement that raises a plausible inference of a right to relief. FED. R. CIV. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts the complaint's factual allegations as true and draws all reasonable inferences in plaintiff's favor, but it need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

The court notes four other recent cases in this court asserting similar claims. Three such cases were decided at the time the parties briefed Travelers' motion to dismiss. *See Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032 (N.D. Ill. 2021); *Kopsaftis v. Progressive Universal Ins. Co.*, No. 20 CV 6261, 2021 WL 780715 (N.D. Ill. Mar. 1, 2021); *Ridings v. Am. Fam. Ins. Co.*, No. 20 CV 5715, 2021 WL 722856 (N.D. Ill. Feb. 24, 2021). Post briefing, Defendant called the court's attention to a fourth such case. (Dec. 2, 2021 Notice of Suppl. Authority [41] at 1; *see EBCF Enters., Inc. v. Erie Ins. Exch.*, No. 20 C 5476, 2021 WL 5280948 (N.D. Ill. Nov. 12, 2021).) In all four cases, plaintiffs challenged the sufficiency of premium credits offered by their auto insurers in light of the COVID-19 pandemic, asserting claims of bad faith breach, violation of the ICFA, and unjust enrichment. Although decisions by other judges of this court are not binding authority, the court finds their reasoning persuasive, as more fully discussed below.

**I.    Bad-Faith Breach of Contract**

In Count I, Donnellan argues that Travelers breached the duty of good faith and fair dealing. (Compl. ¶¶ 45-55.) The duty exists in every contract and "is an implied promise between the parties that they will not do anything to injure the other party's right to enjoy the benefits of the contract." *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 919 (7th Cir. 1997). The duty is meant "to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted." *N. Am. Elite Ins. Co. v. Menard Inc.*, 491 F.

5

Supp. 3d 333, 339 (N.D. Ill. 2020) (citation omitted). The duty does not provide an aggrieved party with a stand-alone cause of action; rather, it is a "gap-filling" tool "used as a construction aid in determining the intent of the parties where an instrument is susceptible to two conflicting constructions." *L.A.P.D., Inc. v. Gen. Elec. Corp.*, 132 F.3d 402, 404 (7th Cir. 1997) (citations omitted). A breach can arise, as alleged here, if "the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank Nat'l Assoc. v. Paramont Prop.,* 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008).

The court must first resolve whether Donnellan is correct in arguing that her contract vests Travelers with discretion. Donnellan points to the Changes provision of the contract, which states that contractual "terms may not be changed or waived except by endorsement issued by [Travelers]," and also that Travelers "may adjust [the insured's] premium." (Compl. ¶ 30.) The court agrees with Donnellan that this provision distinguishes her case from *Ridings*; there, the court found the plaintiff was attempting to use the implied duty of good faith and fair dealing "to add substantive provisions to a contract when circumstances change." *Ridings*, 2021 WL 722856, at *7. The *Ridings* court noted that the plaintiff did not plead, "for example, that [the insurer] exercised discretion under any provision of the contract in bad faith." *Id.* The opposite is true here.

*Siegel* is distinguishable for a similar reason. There, while the contract at issue also included a provision titled "Changes," its substance differed. That contract stated that the insurer "may revise [the] policy during its term *to provide more coverage* without an increase in premium." *Siegel*, 523 F. Supp. 3d at 1039 (emphasis added). While the Changes provision thus authorized the insurer to increase coverage, it did not grant the insurer discretion to lower premiums, as

6

plaintiff desired.[2] By contrast, Travelers does have discretion to lower premiums under its contract with Donnellan.[3]

Travelers next argues that even if the contract vested it with the discretion to lower premiums, it was "impossible for Travelers to even exercise its discretion under [the Changes] provision" because Donnellan did not inform Travelers that the "use of [her] insured vehicle[ ]" decreased during the pandemic. (Mot. to Dismiss at 6.) That argument may be undermined by the fact that Travelers issued an endorsement "authoriz[ing] payment(s) to [the insured] in response to the COVID-19 pandemic," which would appear to fall under section A of the Changes provision. (Compl. ¶ 30; Stay At Home Credit at 2.) At this stage, Donnellan has sufficiently pleaded that Travelers had discretion, under the terms of the contract (including the endorsement), to lower her premiums in response to the pandemic.

Thus, the only remaining issue is whether the decision Travelers made—to provide insureds with a 15-percent premium credit—was in bad faith. Put another way, the question is whether Plaintiff has alleged that Travelers exercised its discretion "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." *LaSalle Bank Nat'l Assoc.*, 588 F. Supp. 2d at 857. The endorsement[4] states that Travelers "will determine, at [its] exclusive

---

[2] As the contract in *Siegel* did not contain a provision giving the insurer discretion to lower premiums, the plaintiff was unable to state a claim that the insurer breached the contract in bad faith, and thus the court granted the insurer's motion to dismiss on that claim. *Siegel*, 523 F. Supp. 3d at 1040. Note, however, that although the contract did not explicitly give the insurer discretion to lower premiums, it did so nevertheless: it gave the plaintiff a "discount of 15% of her premium for six months due to the COVID-19 pandemic." *Id.* at 1037.

[3] Defendant cites several other cases to further its argument that Donnellan cannot use the implied duty of good faith and fair dealing as an independent cause of action. (*See* Def.'s Mot. to Dismiss [30] (hereinafter "Mot. to Dismiss") at 6-7.) Those cases are inapplicable here because they held that "allegations of bad faith or unreasonable and vexatious conduct, without more . . . do not constitute . . . a *tort*." *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 527, 675 N.E.2d 897, 904 (Ill. 1996) (emphasis added); *see Prescott v. Allstate Life Ins. Co.*, 341 F. Supp. 2d 1023 (N.D. Ill. 2004); *Voyles v. Sandia Mortg. Corp.*, 196 Ill.2d 288, 751 N.E.2d 1126 (Ill. 2001). Donnellan has sued for breach of contract, not tort.

[4] The court focuses on the language of the endorsement—which appears to have been issued in accordance with Section A of the Changes provision—and not the language of the

7

discretion, the amount, frequency, and method of payment(s), if any." (Stay-At-Home Credit at 2.)

As noted, the implied duty of good faith and fair dealing is a tool of contract construction; it aids the court in resolving ambiguity. In Donnellan's case, it is not clear that Travelers' endorsement is, in fact, ambiguous, given that it provides Travelers with "exclusive discretion." *See Ocean Tomo, LLC v. PatentRatings, LLC*, 262 F. Supp. 3d 553, 558 (N.D. Ill. 2017) ("[T]he provision granting 'sole discretion' to the Board of Managers to determine whether certain profits constitute 'Net Profits from Operations' is unambiguous. The covenant of good faith and fair dealing does not serve to impose a limitation on the discretion granted by this provision in and of itself."); *see also Wilson v. Career Educ. Corp.*, 729 F.3d 665, 688 (7th Cir. 2013) ("*Wilson I*") (Wood, J., dissenting in part) (finding that the contractual term "sole discretion" lacked ambiguity and thus "means that there is no basis for invoking the covenant of good faith and fair dealing").

Even assuming some level of ambiguity in the language of the endorsement, the court concludes that Donnellan has not stated a claim for breach of contract. Donnellan has failed, as a matter of law, to claim that Travelers' 15-percent premium credit—as opposed to some larger amount—was inconsistent with the reasonable expectations of the parties. *See Knezovic v. Urban P'ship Bank*, 589 B.R. 351, 359 (N.D. Ill. 2018) (quoting *Cont'l Mobile Tel. Co. v. Chi. SMSA Ltd. P'ship*, 225 Ill. App. 3d 317, 324, 587 N.E.2d 1169, 1174 (1st Dist. 1992)) ("[T]he fact that the

---

Changes provision itself. Under Illinois law, a policy must "be construed in conjunction with endorsements in order to determine the meaning and effect of the insurance contract." *Pekin Ins. Co. v. Recurrent Training Ctr., Inc.*, 409 Ill. App. 3d 114, 118, 948 N.E.2d 668, 673 (1st Dist. 2011) (citing *Vole v. Atlanta Int'l Ins. Co.,* 172 Ill. App. 3d 480, 526 N.E.2d 653 (2nd Dist. 1988)). In doing so here, it is clear that in the context of the COVID-19 pandemic, the Changes provision governs *whether or not* the terms of the contract will be amended (or *whether or not* Travelers will adjust Donnellan's premium). Travelers acted to lower Donnellan's premium, which is the most desirable outcome Donnellan could hope for under the Changes provision; thus, with respect to that provision, she is unable to claim breach of contract. As Donnellan makes clear in her complaint, however, her argument is not that Travelers failed to adjust her premium, but rather that it failed to adjust her premium *enough*. (*See* Compl. ¶¶ 27-28.) That contention is governed by the endorsement, in which Travelers has discretion as to the *amount* of financial relief. (*See* Stay-At-Home Credit at 2.)

8

Note commits the interest rate to the lender's sole discretion compels the conclusion that the parties knew UPB could decline to adjust its interest rate at any time, 'thereby negating any inference that defendant's actions were outside the contemplation of the parties and could be characterized as a breach of good faith.'"); *see also Roan v. Keck, Mahin & Cate*, 962 F.2d 10 (Table), No. 91–2637, 1992 WL 104789, at *6 (7th Cir. May 18, 1992) (finding that a contract, which gave a party "*unlimited* discretion," had such "extreme breadth" that it "imposes a similar breadth upon 'the reasonable expectations of the parties' and concomitantly reduces the scope of judicial review in this regard virtually to zero").

Donnellan cites *LaSalle Bank Nat'l Ass'n* and suggests that the court in that case held that a "party with 'unlimited discretion in deciding whether to perform' certain acts" nevertheless "failed to exercise that discretion in good faith." (Pl.'s Resp. [37] at 15 (quoting *LaSalle Bank Nat'l Ass'n*, 588 F. Supp. 2d at 858-59).) In that case, a contract governing the disbursement of loan proceeds included a provision requiring the borrower to furnish the lender with a "Request" form. *LaSalle Bank Nat'l Ass'n*, 588 F. Supp. 2d at 847. The contract stated that the lender could also require "additional documentation" from the borrower. *Id.* at 858. Citing *Roan*, Judge St. Eve, then of this court, recognized that the breadth of the discretion given to the lender all but precluded judicial review. *Id.* The court nevertheless denied the lender's motion to dismiss the claim of bad-faith breach because the contract "does not make clear whether [the lender] had an unfettered right to require or not to require Request forms." *Id.* In other words, while the lender had unlimited discretion in certain respects, its discretion may have been more bounded in others. *LaSalle Bank Nat'l Ass'n* did not find, as Donnellan contends, that a party with unlimited discretion failed to exercise it in good faith.

Though Donnellan herself does not make note of it, *Wilson I*, mentioned above, does offer Donnellan some support for her argument. The contract at issue in *Wilson I*—called "the Plan"— governed the criteria by which the defendant employer would award an employee, like the plaintiff, a financial bonus. *Wilson I*, 729 F.3d at 669-70. The Plan also gave the employer the right "at

9

any time . . . in its sole discretion" to terminate the Plan. After the employer did just that, the employee brought suit, arguing that the termination of the Plan was "arbitrary and in bad faith." *Id.* at 671. The district court dismissed the case, but the Seventh Circuit found the plaintiff had "successfully pleaded a claim for relief" on the theory that the employer "exercised its right to terminate the Plan in bad faith and in violation of the implied covenant of good faith and fair dealing." *Id.* A concurring opinion explained that "[w]hen one party's contractual obligation is 'contingent upon a condition [peculiarly] within the power of that party,' the controlling party's discretion in bringing about the condition is limited by the implied covenant of good faith." *Wilson I*, 729 F.3d at 674 (Darrow, J., concurring) (quoting *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 990, 466 N.E.2d 958, 972 (1st Dist. 1984)). Unlike in *Wilson I*, where the employer's contractual obligation (paying a bonus) was contingent upon *its own* discretionary decision not to terminate the Plan, in this case, Travelers' contractual obligation (providing insurance coverage) is not contingent on the discretion it has under the endorsement. Rather, Travelers' discretion concerns the extent to which it may lessen *Donnellan's* contractual obligation—payment of premiums. Another concurring opinion in *Wilson I* made the same point: "[T]he fundamental function of contract law . . . is to deter people from behaving opportunistically toward their contracting parties." *Id.* at 680 (Hamilton, J., concurring) (quoting RICHARD A. POSNER, ECONOMIC ANALYSIS OF LAW 81 (3d ed. 1986)). "This duty of good faith and fair dealing is particularly important," the judge continued, "where one party reserved a discretionary right to modify or terminate the contract in a way that would give that party the opportunity to take unfair advantage of the other." *Id.* at 681. Travelers' discretion gives it no means to take advantage of Donnellan.

On remand, the district court in *Wilson* granted summary judgment to the employer, and this time the Seventh Circuit affirmed. As Judge Alonso of this court has observed, in that decision, the Seventh Circuit effectively clarified that whether a party's exercise of discretion violated reasonable expectations of the parties is a matter that "must be judged *objectively*."

10

*EBCF Enters.*, 2021 WL 5280948, at *8 (citing *Wilson v. Career Educ. Corp.*, 844 F.3d 686, 689 (7th Cir. 2016) ("*Wilson II*")). Judge Alonso explained that

> [a]ny expectation plaintiffs had that defendant could not "profit" from their insurance contracts, even if circumstances changed the absolute risk, is not *objectively* reasonable, as a matter of law. That is because such an expectation would be contrary to the very concept of insurance. 5 *Couch on Ins.* § 79.7 ("[A]n insured may not have any part of his or her premium returned once the risk attaches . . . for the insurer has, by taking upon itself the peril, become entitled to the premium."); *see also Garcia v. City of Bridgeport*, 306 Conn. 340, 355, 51 A.3d 1089 (Conn. 2012) ("[I]nsurance [is] the assumption of another's risk for profit.").

*Id.* Put simply, insurance contracts include ex ante risk for both the insurer and the insured. It would not be a windfall to Donnellan, ex post, if she had filed numerous claims in March 2020 that exceeded the value of the premiums she paid to Travelers. Nor is it a windfall to Travelers where, as Donnellan alleges, fewer claims were made during the start of the pandemic. It was not objectively reasonable for Donnellan to expect Travelers to exercise its exclusive discretion to award her a premium credit in any particular amount, let alone in an amount greater than the 15-percent premium it extended. Count I is dismissed.

## II. Illinois Consumer Fraud and Deceptive Business Practices Act

In Count II, Donnellan asserts that Travelers violated the ICFA, 815 ILCS 505/1 et seq. (Compl. ¶¶ 56-71.) The ICFA is "intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, 135 N.E.3d 73, 80 (Ill. 2019). To state a claim under the Act, a plaintiff must plead "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). To establish actual damages, a plaintiff must show "actual pecuniary loss." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)).

A plaintiff may recover under either of two distinct theories: unfairness or deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417, 775 N.E.2d 951, 960 (Ill. 2002). Donnellan alleges Travelers violated the ICFA under the unfairness theory by

> violating fundamental principles of rate-setting by failing to charge premiums that reflect an accurate assessment of risk; charging and failing to fully refund unconscionably excessive premiums with full knowledge of the amount and extent of their excess; and failing to refund unconscionably excessive premiums to the consumers who initially paid those premiums.

(Compl. ¶ 58, 59-60.) For an ICFA unfairness claim, courts consider three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 201 Ill.2d at 417-18, 775 N.E.2d at 961. A plaintiff need not necessarily establish all three factors. Rather, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 418, 775 N.E.2d at 961 (quoting *Cheshire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 106, 612 A.2d 1130, 1143-44 (Conn. 1992)).

### A. Public policy

Donnellan asserts that Travelers' conduct violates Illinois public policy in two separate ways. First, she states that it violates the policy "that insurance premiums are to be based on risk." (Compl. ¶ 62.) Second, she states that it violates the policy "reflected in the State of Illinois's desire to curb and urge the reporting of price-gouging and fraud as a result of COVID-19, reflecting a public policy against taking financial advantage of the pandemic." (*Id.* ¶ 63.)

#### 1. Premiums based on risk

As noted earlier, other judges of this court have ruled on motions to dismiss in cases similar to this one, in which plaintiffs challenged their auto insurers' failure to reduce their premium obligations in light of COVID-related driving restrictions. In one of these, *Siegel*, the court denied the insurer's motion to dismiss. Donnellan urges the court to follow Siegel's lead, while Travelers cites the other cases as more persuasive. In *Ridings*, for example, the court noted that "[u]nder Illinois law," an insurer is "free to set and adjust premiums in accordance with its contracts."

*Ridings*, 2021 WL 722856, at *6. The *Ridings* court also cited *Corbin v. Allstate Corp.*, 2019 IL 170296, 140 N.E.3d 810 (5th Dist. 2019), which involved a class action brought against an auto insurer. The insurer in *Corbin* allegedly increased the price of its premiums for longtime customers because it believed those customers were willing to tolerate that price increase; the class alleged that this practice violated the ICFA because the insurer failed to disclose that its premium pricing was based in part on a non-risk factor. *Corbin*, 2019 IL 170296, ¶ 3, 140 N.E.3d at 812-13. In answering two certified questions—whether the primary jurisdiction and filed rate doctrine compelled dismissal of the case, as the insurer unsuccessfully argued to the circuit court below—the *Corbin* court discussed public policy related to auto insurance in Illinois. Specifically, the court stated that "the Illinois legislature has determined that open competition in auto insurance rates is workable and beneficial," and "insurers . . . are free to establish rates in response to their independent assessments of economic and market conditions." *Id.* ¶ 12, 140 N.E.3d at 815. As noted in *EBCF Enters.*, insurance companies can be understood as adhering to this public policy when they voluntarily refund some portions of their customer's premiums, presumably in an effort to retain customers who might otherwise switch to a competitor. *EBCF Enters.*, 2021 WL 5280948, at *5. Since Travelers' 15-percent credit was consistent with the Illinois public policy of setting rates according to economic and market conditions, this court agrees that "[i]n light of *Corbin*, it is clear that plaintiffs have not plausibly alleged and cannot allege that defendant's rate decisions in connection with the decrease in driving caused by the pandemic are against Illinois public policy." *Id.*

*Siegel* is distinguishable from this case. In that case, plaintiffs pleaded not just unfairness but also deception. The *Siegel* court found that the plaintiff had adequately pleaded an ICFA deception claim under the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Siegel*, 523 F. Supp. 3d at 1041, 1044. A primary reason was that the insurer in that case did not just offer a premium credit, but also issued a statement that "shelter in place laws have reduced driving, and [the insurer was] passing *these savings* on to [its] auto, motorcycle, and RV

customers." *Id.* at 1042. The court found that "[a] reasonable consumer might conclude that 'these savings' in the statement refers to those savings based on the earlier described reduction in driving," and that therefore, the "statement has the capacity to deceive consumers as to the portion of savings" that the insurer was actually passing on with its premium credit. *Id.* In support of that conclusion, the court cited *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019), in which "a candy company's empty space in its opaque packaging was considered deceptive because it caused reasonable consumers to think that the boxes contained more chocolate than they actually did."

The *Siegel* court also declined to dismiss plaintiff's unfairness claim, but its discussion of that claim was much less extensive. The court simply again cited *Benson*, and noted that the insurer's "program amounted to less of a refund than it would have if [it] truly 'pass[ed] on all of the savings,' as [plaintiff] expected." *Siegel*, 523 F. Supp. 3d at 1044. *Id.* Donnellan has not pleaded that Travelers made any statement or other representation that is analogous to those made in *Benson* or *Siegel*. Donnellan notes (Pl.'s Resp. at 7-8) that the *Siegel* court also mentioned the plaintiff's allegation that the insurer's "premium prices became unconscionably high when the pandemic drastically reduced the risk pool," and the plaintiff's contention "that this pricing violates Illinois public policy regarding insurance premiums." *Siegel*, 523 F. Supp. 3d at 1044. *Siegel* does not identify the Illinois public policy at issue, nor does *Siegel* address *Corbin*; perhaps the *Siegel* insurer's allegedly deceptive statement influenced not only the court's ruling regarding the deception claim, but its analysis of the unfairness claim as well. In any event, Donnellan's claim more closely resembles those made by plaintiffs in *Ridings* and *EBCF Enters.*, and this court finds their reasoning more persuasive.

Donnellan also cites *Allstate Ins. Co. v. Keller*, 17 Ill. App. 2d 44, 49, 149 N.E.2d 482, 484 (1st Dist. 1958) as support for her contention that "Illinois courts have long held that insurance is 'cloaked with a public interest' and have required that premiums accurately reflect risk." But as the court in *EBCF Enters.* explained, "[u]nderstood in the proper context," the *Allstate* court was

merely explaining "how insurance generally works."[5] *EBCF Enters.*, 2021 WL 5280948, at *5. Moreover, even if the *Allstate* court was stating a public policy, "it would not help" Donnellan, because "a public policy requiring that premiums be based on risk is not the same as a public policy requiring that premiums set ex ante ought to be refunded if, ex post, the risk turns out to be different from what the actuaries calculated ex ante." *Id.* In sum, Donnellan has not adequately pleaded that Travelers offended a public policy that premiums ought to be based on risk.

### 2. Taking financial advantage of the public during the pandemic

Donnellan's other public policy argument concerns the March 9, 2020 Gubernatorial Disaster Proclamation[6] and related press release.[7] (Pl.'s Resp. at 7.) But as Travelers points out, nothing in either of those documents establishes any kind of public policy that is implicated by the allegations in Donnellan's complaint. (Mot. to Dismiss at 10; Def.'s Reply [38] at 6-7.) Donnellan specifies that she is referring to the Attorney General's statement that "[n]ow more than ever, it is crucial to put people before profits." (Pl.'s Resp. at 7.) But Donnellan makes no logical connection between that comment, made in the context of the state's commitment to preventing price gouging on essential medical supplies, and Travelers' decision to lower Donnellan's premium payments. Donnellan has not alleged an actionable violation of public policy.

### B. Immoral, unethical, and unscrupulous

Donnellan states that "Travelers' conduct, as described herein, is immoral, unethical and unscrupulous because Travelers has taken advantage of the global COVID-19 pandemic for its own financial gain." (Compl. ¶ 64.) It is not, of course, immoral, unethical, or unscrupulous to

---

[5] The same is true for Donnellan's quotation of the Seventh Circuit's statement in *Am. Deposit Corp. v. Schacht*, 84 F.3d 834, 840 (7th Cir. 1996), that "insurance is the distribution of risk according to hazard, experience, and the law of averages."

[6] The Proclamation can be found online at https://www.illinois.gov/content/dam/soi/en/web/coronavirus/documents/coronavirus-disaster-proc-03-12-2020.pdf.

[7] The press release can be found online at https://illinoisattorneygeneral.gov/pressroom/2020_03/20200317b.html.

seek financial gain. *EBCF Enters.*, 2021 WL 5280948, at *6 ("Defendant is not in the insurance business for its health; it is in the insurance business to make money."). And the Illinois Supreme Court has stated that "charging an unconscionably high price generally is insufficient to establish a claim for unfairness." *Robinson*, 201 Ill.2d at 418, 775 N.E.2d at 961; *see also Horist v. Sudler and Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (affirming the dismissal of plaintiffs' unfairness claim because it amounted to "a generic allegation that [defendant] charged too much").

As Donnellan sees things, "[w]hether a practice is immoral, unethical, oppressive, or unscrupulous depends on whether it has left the consumer with little choice but to submit to it." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002-03 (7th Cir. 2018). In *Newman*, the plaintiff had made "an investment that could bear fruit only if she stayed with the policy." *Id.* at 1003. The defendant had raised the price of that policy, however, leaving the plaintiff "little choice but to submit." *Id.* Here, Donnellan has not alleged that she was similarly coerced, nor could she: auto insurance is not an "investment" in the same sense, because it is a pay-as-you-go service for which she got the benefit of her bargain. Donnellan argues that by the time she discovered "Travelers' excess profits" and "unfair windfall," she had no ability to get a refund for her "earlier overpayments." (Pl.'s Resp. at 9-10.) But again, Donnellan appears to misconstrue the function of insurance. *EBCF Enters.* is, again, instructive:

> [P]laintiff's theory is that it is unfair for defendant to retain a premium that was calculated for a risk that *changed*, because something (namely, the pandemic) occurred *after* the policy was issued that made many customers less likely to drive, such that, in *retrospect*, the premium seemed too high. That is not how insurance works. 5 *Couch on Ins.* § 79.7 ("an insured may not have any part of his or her premium returned once the risk attaches . . . for the insurer has, by taking upon itself the peril, become entitled to the premium").

*EBCF Enters.*, 2021 WL 5280948, at *5. Donnellan's insurance contract with Travelers included the potential that she would make claims exceeding her premiums (and Travelers would lose money), as well as the possibility that Donnellan would not make such claims (and Travelers

would profit). Donnellan has not sufficiently pleaded that Travelers' conduct—which, recall, was to *lower* Donnellan's premium—was immoral, unethical, or unscrupulous.[8]

### C. Substantial injury

Donnellan alleges that

> [t]he injury caused by Travelers' conduct is significant in light of very conservative calculations that a 30% minimum average premium refund would be required to correct the unfair windfall just for the time period from mid-March through the end of April 2020. Further, the injury is significant because Travelers' excessive premiums have allowed the company to obtain an unfair windfall at the expense of its customers.

(Compl. ¶ 66.) Other courts in this district have addressed the issue of injury in this context. The *Siegel* court found that the plaintiff had "plainly" pleaded that "she was deprived of the benefit of her bargain" and that the insurer's failure "to refund her excessive premiums amounts to a tangible, financial loss" for plaintiff. *Siegel*, 523 F. Supp. 3d at 1045. The *Ridings* court, in contrast, found the plaintiff "ha[d] not pleaded how the premium relief she received caused her any pecuniary harm." *Ridings*, 2021 WL 722856, at *6. In fact, the court found, "[s]he got a pecuniary benefit." *Id.* at *5. "[A]nd even if she had" pleaded pecuniary harm, the court continued, "it could have been avoided through cancellation of her policy." *Id.* at *6. Similarly, in *EBCF*

---

[8] The parties make the same arguments about the applicability of *Siegel* discussed above, and the court resolves those arguments in the same manner as above. In addition, Donnellan cites caselaw that is inapplicable here. First, she states that *Edson v. Fogarty*, 2019 IL 181135138, ¶ 35, 138 N.E.3d 238, 244 (1st Dist. 2019) upheld an "ICFA claim where misrepresentation could not have been discovered 'merely by reviewing' the documents at issue." (Pl.'s Resp. at 9.) Donnellan has not alleged that she was unable to discover any misrepresentations. Second, she states that in *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008), this court found a "practice was oppressive when there were no 'procedures set up to compensate recipients for the losses incurred as a result' of the unfair practices." (Pl.'s Resp. at 10.) But, as discussed with respect to her alleged injury below, she has not pleaded that she had any losses that required compensation. Finally, she quotes *Wendorf v. Landers*, 755 F. Supp. 2d 972, 979 (N.D. Ill. 2010), which noted that "[c]ourts interpreting the meaning of 'unfair practices' have held that a plaintiff states a claim under the ICFA where the defendant's conduct gave plaintiff no reasonable alternative to incurring a charge or penalty." (Pl.'s Resp. at 9.) Plaintiff did not incur a charge or penalty, and as discussed below, if dissatisfied with the insurance arrangement, Donnellan had the reasonable alternative of switching insurers.

*Enters.*, the court found "plaintiffs have not alleged a substantial injury" because "plaintiffs could have avoided the harm by purchasing a different policy (or not purchasing it at all)." *EBCF Enters.*, 2021 WL 5280948, at *6 (citing *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) ("[Plaintiff] cannot establish a substantial injury because she could have avoided the harm by purchasing a different long-term care insurance policy from another company.")).

To state a claim, Donnellan must allege the injury was "(1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014). In this court's view, Donnellan's allegations fall short on all three factors. Donnellan received a partial refund of her auto insurance premium— even if that amount is less than she believes is appropriate, these circumstances cannot be characterized as a "substantial" injury. As to countervailing benefits, it appears that several car insurance companies offered premium credits in response to the COVID-19 pandemic—meaning that Travelers' decision to do so may have kept it competitive with those other insurance companies, while benefiting Travelers's own customers. With respect to Donnellan's ability to avoid injury: Donnellan has not pleaded that she was unable to cancel her policy and protect herself against the allegedly excessive premium payments to Travelers. In fact, she willingly chose to renew her policy for July 2020 and beyond. (Compl. ¶ 29.) The complaint fails to allege unfair conduct under the ICFA. Count II is dismissed.

### III.     Unjust Enrichment

In Count III, Donnellan pleads "in the alternative to Count I" that "[i]f Travelers' conduct does not constitute a breach of an express contract, Travelers is nevertheless liable for unjust enrichment." (Compl. ¶¶ 72-73.) Since "unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant," *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013), the parties largely focus their argument on whether Donnellan is able to plead unjust enrichment in spite of her other contract-related claims.

(*See* Mot. to Dismiss at 13-14; Pl.'s Resp. at 16; Def.'s Reply at 11-12.) That issue aside, Donnellan's claim of unjust enrichment relies on her allegation that "Travelers engaged in unlawful and improper conduct in violation of ICFA, as described above in Count II." (Compl. ¶ 75.) But this court found Donnellan did not state a claim on Count II. And the Seventh Circuit in *Toulon* "agree[d] with the district court that [plaintiff] failed to state a claim for unjust enrichment because she failed to state a claim for fraud or for violation of the ICFA." *Toulon*, 877 F.3d at 741-42; *see also EBCF Enters.*, 2021 WL 5280948, at *7 (dismissing the unjust enrichment count because plaintiff failed to state a claim under the ICFA). Count III is dismissed.

IV.     **Primary Jurisdiction and Filed Rate**

Travelers argues that "[t]he action should be dismissed pursuant to the doctrine of primary jurisdiction because the Department of Insurance Director has the authority under the Insurance Code to investigate and regulate" the issues involved in this case. (Mot. to Dismiss at 14.) The doctrine of primary jurisdiction instructs courts to delay ruling on an issue "that is within the exclusive original jurisdiction of the regulatory agency to resolve," but it does not strip federal courts of subject matter jurisdiction over the case. *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001). Travelers also argues the case should be dismissed due to the "[c]losely related . . . filed rate doctrine." (Mot. to Dismiss at 15.) That doctrine "protects public utilities and other regulated entities from civil actions attacking their rates if the rates must be filed with the governing regulatory agency and the agency has the authority to set, approve, or disapprove them." *Cohen*, 735 F.3d at 607.

As in *Kopsaftis*—where the insurer-defendant made the same arguments as Travelers— "it is not clear that the Illinois Department of Insurance has the authority to approve or disapprove insurance rates." *Kopsaftis*, 2021 WL 780715, at *2 n.3 (citing *Cohen*, 735 F.3d at 607). And, as in *Kopsaftis*, the court need not "reach the filed-rate and primary-jurisdiction questions" because Donnellan has not stated a claim for relief. *Id.* (citing *Cohen*, 735 F.3d at 608 ("We can avoid the nuanced questions of federal preemption and the filed rate doctrine here. The district court

properly dismissed the complaint . . . for a different and more fundamental reason: [plaintiff] failed to state any viable claim for relief.")).

## **CONCLUSION**

Travelers Indemnity Company's motion to dismiss [30] is granted. Daly Donnellan's First Amended Complaint [28] is dismissed without prejudice; she has leave to file an amended complaint within 30 days of this order.

ENTER:

Dated: January 18, 2022

_____
REBECCA R. PALLMEYER
United States District Judge